Samuel **SEROYER** and Richard Wheeler, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**PFIZER, INC., Defendant.**

No. CIV. A. 97–D–193–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 14, 1997.

John A. Tinney, Roanoke, Larry W. Morris, Alexander City, Lesley Blackner, New York, NY, for Plaintiffs.

James W. Gewin, John E. Goodman, Richard L. Sharff, Jr., Birmingham, Thomas A. Smart, Kenneth A. Freeling, Robert A. Tauber, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is plaintiffs' motion to remand filed March 18, 1997. Defendant filed a brief in opposition on April 9, 1997, and plaintiffs replied on April 23, 1997. In their reply, plaintiffs included the affidavit of plaintiff Samuel Seroyer ("Seroyer"). Defendant filed a motion to strike Seroyer's affidavit on April 29, 1997, and plaintiff's filed a response in opposition on May 9, 1997. Defendant replied thereto on May 19, 1997. Additionally, both plaintiffs and defendant have filed "supplementary new evidence" and "additional authority" in support of their respective positions in this matter.[1] After

---

1. In support of its memorandum in opposition to plaintiffs' motion to remand, defendant filed a portion of plaintiff Richard Wheeler's deposition on May 28, 1997. In response, on June 10, 1997, plaintiffs filed the entire deposition transcripts of both plaintiff Richard Wheeler and plaintiff Samuel Seroyer. Additionally, in an effort to bolster their pending motion to re-

mand, plaintiffs direct the court's attention to *Crowe v. Coleman*, 113 F.3d 1536 (1997), a recent Eleventh Circuit opinion. In the opinion, the Eleventh Circuit Court of Appeals reiterated the familiar principle that when deciding remand issues, district courts "must evaluate the factual allegations in the light most favorable to the plaintiffs." *Id.* at 1538.

careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that the above-styled action is due to be remanded. In reaching this decision, the court has found it unnecessary to rely on Seroyer's affidavit and, consequently, finds defendant's motion to strike is due to be denied as moot.

## BACKGROUND

This multi-state consumer class action was originally filed on January 17, 1997, in the Circuit Court of Chambers County, Alabama. In their complaint, plaintiffs allege on behalf of themselves and those similarly situated that defendant Pfizer, Inc. ("Pfizer") has made misrepresentations concerning the dental rinses Plax, Plax Advance Formula, and New Mint Sensation Advanced Formula Plax ("Plax" collectively). Specifically, plaintiffs allege that defendant has misrepresented its product as a dental rinse which removes plaque and bacteria from teeth, whitens teeth, makes teeth smoother and provides other health benefits. Plaintiffs seek recovery under various legal theories: the Magnuson–Moss Act, 15 U.S.C. § 2301 *et seq.* (Counts I and II); the Uniform Commercial Code of each state, §§ 2–313, 2–314 (Counts I and II); the consumer protection or deceptive trade practices statutes of 47 states (Count III); fraud under Alabama law (Counts IV and V); breach of contract (Count VI); negligence and negligent misrepresentation (Count VII); and, unjust enrichment (Count VIII).

In their prayer for relief, plaintiffs request the court "enter judgment against Pfizer and in favor of the plaintiffs, and to award ... relief not to exceed $49,999.00 per plaintiff and class member including attorney's fees and costs." Compl. at 25. Plaintiffs pray for this action to proceed as a "class action pursuant to Alabama Rule of Civil Procedure 23(a)(1)-(4) and (b)(3) for damages." *Id.* They request judgment for "compensatory damages,[sic] (but not punitive damages), including prejudgment interest, for breach of implied or written warranty, deceptive trade practices, violation of Alabama Code §§ 6–5–101, *et seq.*, breach of contract, negligence, fraud and deceit and unjust enrichment." *Id.* at 25–26. Additionally, plaintiffs request reasonable attorneys' fees and costs. With

respective to injunctive relief, plaintiffs request "[s]uch other and further legal or declaratory relief, (**but no punitive damages or equitable relief**) as the Court deems just and proper." *Id.* at 26 (emphasis in original). Finally, plaintiffs conclude their complaint and prayer for relief with the following disavowal: "Nothing in this complaint should be deemed to warrant the conferring of jurisdiction on a federal court and plaintiff does not seek any form of equitable relief." *Id.*

Concurrently with the filing of their complaint, plaintiffs filed a motion for conditional class certification, which was granted the same day. In their motion, plaintiffs moved for conditional certification pursuant to Alabama Rules of Civil Procedure 23(a), (b) and (c). In support of their motion, plaintiffs argued that there existed common questions of law and fact, plaintiffs also stated that "[i]njunctive aspects of this case ... involve identical issues of interpretation of the same statutory provisions, as applied to the same factual situation ...." Pls.' Mot. for Conditional Class Certification ("Mot. for Cert.") at 1–2. Plaintiffs make two further references to injunctive relief in their motion, stating that "the defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the class as a whole. Thus, injunctive and other non-monetary relief is appropriate and is sought here for each class member." *Id.* at 3 (internal citations omitted).

On February 18, 1997, Pfizer timely removed this action to the Middle District of Alabama. As grounds for its removal, Pfizer contends that there is complete diversity of citizenship between the representative plaintiffs and itself and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Pfizer argues that more than $75,000 has been put in controversy in this putative nationwide class action for three reasons: (1) plaintiffs' demand for declaratory relief amounts to a mandatory injunction requiring Pfizer to recall and relabel its Plax products and the cost of such relief places more than $75,000 in controversy; (2) the named plaintiffs may recover attorneys' fees under certain deceptive practices statutes;

and (3) plaintiffs' claim for unjust enrichment seeks a disgorgement that would create a "common fund" also exceeding the jurisdictional requirement. To support its contention that plaintiffs are requesting injunctive relief in excess of $75,000, Pfizer cites plaintiff's Motion for Conditional Class Certification, deposition testimony, and a settlement letter sent to Pfizer prior to the filing of this lawsuit. On February 26, 1997, upon removal of this action to the Middle District of Alabama, this court found that plaintiffs had failed to demonstrate that the requirements of Federal Rule of Civil Procedure 23 had been met and, consequently, vacated the state court's conditional class certification. Denying that the amount in controversy exceeds $75,000, plaintiffs now timely move the court to remand this action back to state court.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir.1994); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). A federal district court may assert its jurisdiction, however, when citizens of different states are involved and the amount in controversy exceeds $75,000,[2] exclusive of interest and costs. 28 U.S.C. § 1332(a). Therefore, where the parties are diverse and the amount in controversy is sufficient, a defendant has a right, granted by statute, to remove an action from state court and avail itself of the federal court system. 28 U.S.C. 1441[3]; *Burns*, 31 F.3d at 1095.

Because removal jurisdiction raises significant federalism concerns, the removal statutes must be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts about federal court jurisdiction must be resolved in favor of a remand to state court. *Burns*, 31 F.3d at 1095 (holding that "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). Accordingly, the Eleventh Circuit has held that where plaintiffs limit their claims to an amount which is below the requisite amount for a federal court to assert diversity jurisdiction, the defendant must show to a "legal certainty" that plaintiffs' claims exceed the jurisdictional amount. *Id.* This heavy burden reflects the notion that plaintiff has the right to choose his or her own forum, for "plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy." Charles A. Wright & Arthur R. Miller, 14A Federal Practice & Procedure § 3702. "If ... [plaintiff] does not desire to try his case in federal court he may resort to the expedient of suing for less than the jurisdictional amount and although he would be entitled to more, the defendant cannot remove." *St. Paul Mercury*, 303 U.S. at 294.

The Eleventh Circuit has cautioned that though defendant's burden is a heavy one, it is not impossible. *Burns*, 31 F.3d at 1096. The defendant may remain in federal court as long it demonstrates that plaintiffs' counsel has falsely represented, or simply does not appreciate, the value of his clients' case.[4] *Id.* at 1095. In other words, defendant must demonstrate "that, if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [$75,000]." *Id.* (citing *Kliebert v. Upjohn Co.*, 915 F.2d 142, 147 (5th Cir.1990)). "The standard is an objective one; plaintiff[s'] or plaintiff[s'] counsel's subjective intent in drafting the prayer is not the true issue." *Id.* at 1096.

---

**2.** The jurisdictional amount provision in 28 U.S.C. § 1332 has been changed from $50,000 to $75,000 under the Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Stat. 3847 (1996).

**3.** The general removal statute provides:
 Except as otherwise provided by act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 28 U.S.C. § 1441(a).

**4.** The Eleventh Circuit has also stated, however, that a "plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth." *Burns*, 31 F.3d at 1095.

■ Pfizer contends, however, that the "legal certainty" burden articulated in *Burns* should not apply to the instant action. Instead, Pfizer argues that it should only be required to satisfy a "preponderance" burden. Where there is an unspecified claim for damages, "a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356–57 (11th Cir.1996). Thus, "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement." *Id.* at 1357. Pfizer argues that in the instant action, plaintiffs seek declaratory and injunctive relief which is unspecified in amount, and, therefore, the preponderance standard rather than the legal certainty standard should apply.

■ Upon review of the complaint, the court finds that plaintiffs have in fact demanded a sum certain. It is true that in subparagraph D of their prayer for relief, plaintiffs neglect to demand a sum certain, and make only the following general request: "D. Such other relief and further legal or declaratory relief, (but no punitive damages or equitable relief) as the Court deems just and proper." Plaintiffs also fail to recite a sum certain in any of the other subparagraphs found in their prayer for relief. However, the first paragraph in the prayer introduces the subparagraphs and does contain a sum certain. Plaintiffs' prayer appears as follows:

### RELIEF REQUESTED

WHEREFORE, plaintiffs on behalf of themselves and all others similarly situated, pray the Court to enter judgment against Pfizer and in favor of the plaintiffs, and to award the following relief not to exceed $49,999.00 per plaintiff and class member including attorney's fees and costs:

Compl. at 24. The phrase "the following relief" as well as the colon appearing at the end of the introductory paragraph indicate that the $49,999.00 is meant to apply to all four subparagraphs appearing beneath the introductory paragraph. Accordingly, the court finds that the sum certain of $49,999.00 is intended to limit the total recovery of each plaintiff, including any injunctive or declaratory relief, and that the "legal certainty" standard should apply to the remand at issue.

### DISCUSSION

Plaintiffs in the instant action have specifically stated in their complaint that they seek relief not to exceed $49,999.00 per plaintiff and class member. Moreover, in an effort to remain below the requisite amount in controversy, they repeatedly state that they do not request punitive damages or equitable relief. Finally, they clearly indicate that they wish to pursue their claim in state court rather than federal court, stating that "[n]othing in this complaint should be deemed to warrant the conferring of jurisdiction on a federal court and plaintiff does not seek any form of equitable relief." Defendants, however, insist that even with plaintiffs' various disavowals appearing throughout their complaint, that plaintiffs' claims, i.e., claims under consumer protection statutes requiring injunctive remedies, attorneys' fees, and unjust enrichment, will most certainly exceed the requisite amount in controversy. Under *Burns,* the court's inquiry in the instant action must focus on whether the plaintiffs' claims must exceed the jurisdictional amount.

### A. Injunctive and Declaratory Relief

Pfizer maintains that the jurisdictional amount is satisfied by the cost of compliance with the injunctive and declaratory relief demanded by plaintiffs in their complaint. Plaintiffs, on the other hand, contend that they are only asking for declaratory relief and not "injunctive relief" per se and that in no event are they requesting relief which would amount to more than $49,999.00 per plaintiff and class member. But Pfizer argues that plaintiffs are seeking more than just declaratory relief. In support of its argument, Pfizer points to plaintiffs' prayer for relief which requests "[s]uch other and further legal or declaratory relief as the Court deems just and proper" and to plaintiffs' motion for conditional class certification in which plaintiffs specifically refer to the need for injunctive relief in this matter.

Additionally, Pfizer contends that plaintiffs' complaint expressly incorporates a letter to Pfizer, dated January 6, 1997, in which plaintiffs' counsel demanded, *inter alia*, a recall of the product and notification to consumers of the non-conformance of Plax with Pfizer's warranties and representations. Not. of Removal, Ex. C. Pfizer submits the affidavit of Michael Bentivegna, Group Marketing Director for Advanced Formula Plax at Pfizer, who testifies that if Pfizer is required to either change its advertising and labeling or to recall the product nationwide, such relief would be in excess of $75,000.00. *Id.* Pfizer argues that the cost of such injunctive relief should be aggregated, and, consequently, the requisite jurisdictional amount would be met. *See Tapscott,* 77 F.3d 1353 (holding that punitive damages reflect a common and undivided interest in the relief that may be aggregated for determining amount in controversy); *see also, Foster v. ABTco., Inc.,* No. 96–0069–AH–M, slip op. at 9–10 (S.D.Ala. Sept. 9, 1996)(finding injunctive relief to be a collective right and aggregating among all the plaintiffs to meet the jurisdictional amount for diversity jurisdiction).

To further bolster its contention that plaintiffs intended to seek injunctive relief at the time they filed their complaint, Pfizer submits the deposition testimony of plaintiff Seroyer in which he states that he authorized his counsel to send the letter requesting injunctive relief to defendants. Seroyer Dep. at 189, 196. Pfizer also submits the testimony of plaintiff Wheeler in which he states that "it should be up to a jury" whether Pfizer should be ordered to correct any misinformation. Wheeler Dep. at 199–201. Summarizing Wheeler's testimony, Pfizer states that "Mr. Wheeler testified that he understands and believes that if plaintiffs establish these allegations, to the effect that Pfizer has violated the law by failing to recall Plax and correct its advertising, the Court should order Pfizer to recall the product and issue corrective advertising." Def.'s Reply to Pls.' Notice of Supp. New Evidence (6/16/97). However, the court's review of Wheeler's cited testimony reveals that Wheeler does not agree or disagree with the need for injunctive relief, but instead discloses Wheeler's oft-repeated response that any relief granted is "up to the Judge and jury"—a sentiment with which the court is hard-pressed to disagree.

Certainly on the face of their complaint, plaintiffs appear to have requested injunctive relief for less than the jurisdictional amount. As the court has noted above, plaintiffs include a prayer for legal or declaratory relief, but they also specifically state that they seek **"no punitive damages or equitable relief"** (emphasis in original). Therefore, the court finds that on the face of the complaint, plaintiffs do not make a claim for injunctive relief. However, the court may look beyond the face of the complaint to extrinsic evidence in its consideration of whether plaintiffs are underestimating or falsely representing the value of their case. For instance, in *Burns,* the court stated that while a settlement offer made prior to suit "may not be determinative, it counts for something." 31 F.3d at 1097; *see also Foster,* No. 96–0069–AH–M, 3–4 (finding it reasonable "to look to the demand letter to help flesh out the relief the Plaintiffs were seeking in the face of their open-ended request for equitable relief"); *Progressive Specialty Ins. Co. v. Nobles,* 928 F.Supp. 1096, 1098 (M.D.Ala.1996)(stating there is no question that the court may consider the settlement offer in determining whether the case should be remanded, but finding that settlement offer not significant enough to overcome specific request in more recent ad damnum clause). Thus, in addition to reviewing the face of the complaint, the court may also consider plaintiffs' demand letter, motion for conditional class certification and deposition testimony.

Here, plaintiffs sent a letter, approximately ten days prior to filing suit, in which they outlined their demands that Pfizer take "immediate steps to notify consumers of the failure of Plax to conform with [Pfizer's] warranties and representations," "implement a recall of Plax," and "cease all deceptive trade practices." Not. of Removal, Ex. B. Pfizer contends that not only does this demand for injunctive relief indicate plaintiffs' intentions at the time of the complaint, but also that plaintiffs expressly incorporated the demand as part of their complaint. In ¶ 44 of their Complaint, plaintiffs aver:

Plaintiffs, either individually or through classwide notice of breach which this complaint, and a separate classwide demand letter provided to Pfizer soon after the filing of this complaint, has [sic] given notice under 15 U.S.C. § 2301(e) and/or UCC § 2-607(3)(a). Plaintiffs have thus notified Pfizer of its breach of implied warranty. In their motion to remand, plaintiffs explain that ¶ 44 was intended to demonstrate that they had in fact complied with the notice requirements of the Moss–Magnuson Warranty Act and various state statutes; it was not an intent to incorporate a demand for injunctive relief. The court finds plaintiffs' explanation persuasive: the paragraph specifically states that pursuant to certain statutes, the demand letter gave defendant notice of the violations and the alleged breach of implied warranty. Accordingly, the court finds that the letter, drafted and sent prior to the filing of suit, as well as the complaint's reference to the letter, is not so significant as to overcome the plaintiffs' explicit request for relief.[5] The court further finds that the cited deposition testimony of Wheeler and Seroyer simply does not demonstrate plaintiffs' intention to seek injunctive relief. Rather, the deposition testimony merely reflects plaintiffs' willingness to entrust the resolution of their claim to their counsel, a judge and jury.

Plaintiffs' motion for conditional class certification is more troubling. As the court has previously noted, plaintiffs plainly refer to "injunctive aspects of this case," stating twice that "injunctive and other non-monetary relief is appropriate and sought here for each class member." Mot. for Cert. at 1, 3. Initially, the court notes that the motion appears to be a "boilerplate" or generic motion for conditional class certification, providing little or no detail concerning the types of claims or the specific relief requested. Although the court is somewhat reluctant to assign much value to the motion, it is a pleading made by counsel to the state court, subject to Rule 11 of the Alabama Rules of Civil Procedure, and as such, the court must attach some significance to it. Despite the motion's various references to injunctive relief, the court finds that the motion is not necessarily inconsistent with plaintiffs' statements in their complaint that they do not request equitable relief and their statements in their motion to remand that they seek only declaratory relief and not a mandatory injunction. Accordingly, the court finds that the extrinsic evidence offered by Pfizer in an effort to establish that plaintiffs have requested injunctive or equitable relief amounting to a mandatory injunction in excess of the requisite jurisdictional amount is insufficient to prove to a *legal certainty* that plaintiffs, upon a finding of liability, must recover more than $75,000.00.

In addition to relying on extrinsic evidence to show plaintiffs have, in effect, requested a mandatory injunction, Pfizer also contends that a number of the state Deceptive Trade Practice Act ("DTPA") statutes under which plaintiffs assert claims require that plaintiffs seek and, should plaintiffs prevail, the court award injunctive relief. Specifically, Pfizer cites the DTPA statutes of Georgia, Delaware, and Hawaii as statutes which require the imposition of injunctive relief. Pfizer argues that having included these claims in their complaint, plaintiffs cannot now avoid their jurisdictional consequences.[6]

5. Pfizer attempts to analogize this action to *Foster v. ABTco, Inc.*, No. 96–0069–AH–M at 3–4, where plaintiffs' counsel also sent defendant a demand letter requesting injunctive relief similar to that requested in the demand letter in the instant action. The *Foster* court ultimately concluded that the demand letter, which was sent concurrently with the complaint, was a clear indicator that plaintiffs were requesting injunctive relief over and above the requisite amount in controversy. *Id.* at 7. The "crucial factor" in the court's determination, however, was *not* that plaintiffs referenced the demand letter in their complaint but that they reiterated their request for the equitable relief detailed in their demand letter in their motion to remand. *Id.* By contrast, in the instant action, plaintiffs' demand letter was sent over a week prior to the filing of their complaint, and in their motion to remand and all briefs in support thereof, plaintiffs have stated repeatedly that they only seek declaratory relief rather than the injunctive relief detailed in their earlier demand letter.

6. The court notes that Pfizer has provided little detailed analysis of these statutes which would support its contention that injunctive relief is mandatory, much less prove to a "legal certainty," that such relief, upon a finding of liability, would be mandatory. Moreover, plaintiffs point out that Pfizer misstates the relevant Hawaii statute; the statute which Pfizer cites is the Hawaiian antitrust statute and not the deceptive trade practice statute.

■ In response, plaintiffs first note that they have expressly stated they are not seeking equitable injunctive relief and, therefore, any claims brought under state statutes providing for mandatory injunctive relief are excluded from their complaint. Thus, to the extent that Georgia, Hawaii and Delaware provide DTPA statutes mandate injunctive relief, plaintiffs insist they have not asserted claims under these statutes. The court finds plaintiffs' argument persuasive. Although plaintiffs may not have specifically excluded those statutes which purportedly make injunctive relief mandatory,[7] the court finds that they have effectively precluded claims under those statutes by unequivocally indicating in their request for relief that they do not seek equitable relief. *See, e.g., Grand Ventures v. Whaley,* 622 A.2d 655, 662 (Del.Super.Ct.1992) (finding that because plaintiff "neither sought to obtain, nor had standing to seek an injunction against" defendants, plaintiff could not recover under Delaware's deceptive trade practice statute). Accordingly, the court finds that plaintiffs have not "inadvertently" requested mandatory injunctive relief under the deceptive trade practice statutes of Delaware, Hawaii and Georgia.

Finally, the court must address Pfizer's concern that plaintiffs, as fiduciaries of the putative class, cannot waive the right of the class to obtain all of the relief that the Court deems appropriate. The court refers Pfizer to *Hall v. ITT Financial Services,* wherein the court stated:

It may be that a plaintiff cannot make such a restriction. However, such a restriction might be a reason to deny class certification; in other words, the state court could conclude, after remand, that [the plaintiffs are] not [] adequate class representative[s]. This court should not, however, force []

plaintiff[s] to seek more ···... than [they] want.

891 F.Supp. 580, 582 (M.D.Ala.1994); *see also Parham v. Stouffer Foods Corp.,* 882 F.Supp. 1018 (M.D.Ala.1995); *Kirkland v. Montgomery Ward & Co., Inc.,* 882 F.Supp. 1020 (M.D.Ala.1995). Therefore, in response to Pfizer's apparent concern for the putative class members, the court notes that this is an issue to be taken up during class certification and, furthermore, that class members who are concerned about the representatives' apparent waiver of injunctive relief may be granted the opportunity to opt out of the proposed class.

**B. Attorneys' Fees**

■ The Supreme Court has held that as a general rule, attorneys' fees are excludable in determining the amount in controversy. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933). However, "attorneys' fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant." *Goldberg v. CPC Int'l,* 678 F.2d 1365, 1367 (9th Cir.1982)(citing *Missouri State Life Ins. Co.,* 290 U.S. at 202). Relying on this principle, Pfizer contends that in the instant action, the requisite amount in controversy is satisfied because the attorneys' fees requested by plaintiffs would exceed the jurisdictional minimum. In response, plaintiffs point out that in their complaint, they expressly disavow any claim for statutory attorneys fees, Compl. ¶ 13, and expressly disclaim any relief exceeding $49,999.00 per plaintiff and class member, including attorneys' fees and costs. Instead, plaintiffs seek reasonable attorneys' fees under the common fund doctrine, as a percentage of the recovery for each individual class member. Because fees awarded

---

7. Plaintiffs contend they did in fact specifically exclude those statutes in their Complaint:

With respect to purchasers residing in other states whose law prohibits class action remedies in their own state courts for deceptive trade practices (e.g., Ga.Code Ann. § 10–1–399 ...), the class action prohibitions of such states are either procedural and therefore overridden by this Court's class action rule or they are substantive *and require exclusion of those states from the claim of Deceptive Trade Practices.*

¶ 46 (Emphasis added). Plaintiffs contend that to the extent that the substantive law of Georgia, Hawaii or Delaware (or any other state) prohibits DTPA class actions for money damages, the Complaint expressly excludes such claims. The court notes, however, that it is not entirely persuaded by plaintiffs' argument. Paragraph 46 appears to only exclude those statutes which preclude *any* class action remedy. It would, of course, be possible for a class to receive injunctive relief as a remedy.

from a common fund are not in addition to damages awarded to all class members, the possibility of recovering such attorneys' fees does not demonstrate that the jurisdictional minimum has been met.

However, Pfizer observes that·plaintiffs have sued under the consumer fraud statutes of 47 states, including four of which not only provide for, but make mandatory, an award of attorneys' fees to prevailing plaintiffs.[8] Pfizer argues that should the plaintiff class prevail in this action, the court would be required to award attorneys' fees substantially above the jurisdictional minimum of $75,000 for each of the two *named plaintiffs*. In addition to disputing that the cited statutes require an award of attorneys' fees, plaintiffs vehemently dispute Pfizer's conclusion that the fees *must* be awarded to the *named* plaintiffs. Instead, they argue that any mandatory statutory fees should be attributed pro rata to each class member, and because this is a nation-wide class, it is unlikely that the potential fees would be so immense that the requisite amount in controversy with respect to each of the putative class members would be met.

To support its position, Pfizer relies primarily on *In re Abbott Laboratories*, 51 F.3d 524, 526–27 (5th Cir.1995). In *Abbott Laboratories*, two named plaintiffs brought a class action seeking damages and statutory attorneys' fees under Louisiana's antitrust statute, which provided that persons who sue could recover reasonable attorneys' fees. *Id.* In affirming the denial of the motion to remand, the Fifth Circuit concluded that the plain text of Article 595 of the Louisiana Code of Civil Procedure[9] dictates that the representative parties be awarded any attorneys' fees. *Id* . at 526. In determining that the fees should not be distributed pro rata to all members of the class, the *Abbott* Court took into account "the distinct policy choices behind Louisiana's decision regarding right of recovery by class members" and decided that "under the law of Louisiana the class

representatives were entitled to fees." *Id.* at 527.

Heeding the *Abbott* Court's advice to consider the policy choices of a state, Pfizer urges the court to accept the notion that the statutory scheme and the legislative intent behind state consumer fraud laws compel the attribution of attorneys' fees to the named plaintiffs alone. They argue that these various state statutes provide for fees to the representative class members who pursue the claim and obtain a private remedy for the entire class. *See Martin v. Ford Motor·Co.*, No. G–95–225, slip op. at 18 (S.D.Tex. Aug. 14, 1995)(finding that the Texas Deceptive Trade Practices Act required award of fees to prevailing representative plaintiffs who bear the burden of class litigation but inviting plaintiffs to appeal the issue).

Plaintiffs, on the other hand, cite a number of district court opinions,·decided after *Abbott Laboratories*, in which the courts conclude that statutory fees should be attributed to the class members on a pro rata basis, unless the express language of the statute provides otherwise. *See e.g., Karofsky v. Abbott Laboratories*, 921 F.Supp. 18, 20 n. 2 (D.Me. March 15, 1996)(finding that unlike the statute at issue in *In re Abbott Laboratories*, the Maine statute did not award fees exclusively to the representative parties and also noting that fees are not like punitive damage "where each plaintiff has an integrated right to the full amount of ̣an award")(internal citation omitted); *Gilman v. Wheat, First Sec., Inc.*, 896 F.Supp. 507 (D.Md. July 31, 1995)(reasoning that under the Maryland statute, if the named plaintiff can recover attorneys' fees, so could any similarly situated plaintiff, and, therefore, fees are to be distributed pro rata); *In re High Fructose Corn Syrup Antitrust Litigation*, 936 F.Supp. 530 (C.D.Ill.1996)(finding plain language of West Virginia antitrust statute does not require fees to be awarded *only* to class representative); *see also*

---

**8.** Pfizer cites to the statutes of Texas, Vermont, New Mexico and Wyoming as statutes which require the award of attorneys' fees to prevailing plaintiffs.

**9.** Article 595 of the Louisiana Code of Civil Procedure, provides:

The court may allow the *representative parties* their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.
Emphasis added.

*Goldberg,* 678 F.2d 1365 (9th Cir.1982)(holding prior to decision in *In re Abbott Laboratories* that awarding fees only to named plaintiffs conflicted with policy of *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 300, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that each class member must satisfy the requisite amount in controversy).

In response to Pfizer's argument that legislatures intended to award the representative class member for pursuing the claim and bearing the burden of litigation, plaintiffs point out that courts routinely award representative plaintiffs "incentive awards" to compensate them for the burdens and costs in acting as a class representative, thereby rendering any additional "incentive" award to the class representative unnecessary. Plaintiffs also argue that to allocate fees only to class representatives turns federal jurisdiction into a "shell game" in which the plaintiff class need only include a larger number of representatives in order to remain below the jurisdictional minimum. The court finds these arguments have merit.

 The court finds that Pfizer has failed to demonstrate that any statutorily mandated attorneys' fees must be allocated only to the class representative and may not be distributed among the class members, pro rata. Although the court finds plaintiffs' various arguments and legal citations appealing, the decisive factor in the court's determination is Pfizer's failure to demonstrate (1) that the plain language of any of the statutes at issue specifically awards fees to representative class members, as in *In re Abbott Laboratories,* or (2) the existence of specific legislative intent to award fees only to class representatives as a form of incentive. To the extent that Pfizer argues that treating the attorneys' fees in the manner plaintiffs suggest would harm the rights of the absent class members, the court again states that fiduciary duty and the class representatives' election of remedies is an issue to be taken up in class certification.

Because the court finds that the statutory attorneys' fees may be attributed pro rata to the class members as a whole, the court does not reach the determination of whether the claims of the putative, unnamed class members are subject to supplemental jurisdiction under 28 U.S.C. § 1367. *See Tapscott,* 77 F.3d 1353, n. 9 (declining to address whether the recent passage of 28 U.S.C. § 1367(b) would provide supplemental jurisdiction over class members' claims so long as one class representative meets the jurisdictional requirements).

**C. Unjust Enrichment**

 In its Notice of Removal, Pfizer also contends that plaintiffs' claim for unjust enrichment confers federal jurisdiction in this matter. Specifically, Pfizer states that "[p]laintiffs apparently seek in their complaint to require Pfizer to turn over a lump sum consisting of all monies it has received in the sale of Plax over a period going back to at least 1988. This sum will plainly be in excess of $75,000." In their motion to remand, however, plaintiffs respond that its unjust enrichment claim is a restatement of their breach of contract claim and cannot form the basis for federal jurisdiction. They argue that any recovery they receive under either claim will be the same. *See Henry v. Homeside Lending, Inc.,* CV–96–N–2445–S, slip op. at 6–7 (N.D.Ala. Dec. 13, 1996)(determining that unjust enrichment remedy is a series of many individual claims for small amounts of money and cannot be aggregated to reach the jurisdictional amount).

In its submissions in opposition to plaintiffs' motion to remand, Pfizer has failed to respond to plaintiffs' defense of their unjust enrichment claim. It is unclear to the court whether Pfizer has abandoned this argument for federal jurisdiction. Nevertheless, should Pfizer still consider this a live issue, the court finds that plaintiffs' unjust enrichment claim does not constitute a general "disgorgement" attributable to the class as a whole and, therefore, that the unjust enrichment claim does not satisfy the minimum amount in controversy.[10] As the *Henry* Court so aptly put it, "the measure of restitution and the measure for damages under the breach of contract claim will be identical." *Id.* at *6.

---

10. The court notes that plaintiffs' statements in their complaint that they do not seek equitable relief may bar any recovery under the equitable principle of unjust enrichment.

## CONCLUSION

For the foregoing reasons, the court finds that the requisite amount in controversy for diversity cases has not been met in this case and, therefore, that it lacks subject matter jurisdiction in this matter. The court bases its finding in large part on plaintiffs' repeated and unequivocal assurances that they seek only $49,999.00 per plaintiff and class member and that they do not seek punitive damages, statutory attorneys' fees or equitable relief. While the court does not call into question the integrity or statements made herein by counsel for the plaintiffs, the court emphasizes that should plaintiffs' disregard their decision and pursue punitive damages, statutory attorneys' fees or equitable remedies, then upon application to the court by opposing counsel, an investigation into plaintiffs' counsel's representations to this court will be swift in coming and sanctions, should they be deemed appropriate, will be painful upon arrival. The court offers this advice because it would have applied a less burdensome standard if plaintiffs had not specifically sought an amount of damages below the jurisdictional amount in their ad damnum clause.

Accordingly, it is CONSIDERED and ORDERED that this action be and the same is hereby REMANDED to the Circuit Court of Chambers County, Alabama. The Clerk of the Court is DIRECTED to take all steps necessary to effect said remand.

It is further CONSIDERED and ORDERED that Defendant's Motion to Strike be and the same is hereby DENIED as moot.