**Gladys MOSS, Plaintiff,**

v.

**VOYAGER INS. COS.,
et al., Defendants.**

No. Civ.A. 98–D–1254–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 28, 1999.

Robert S. Thompson, Tuskegee, AL, for plaintiff.

Michael Lester Bell, Birmingham, AL, Robert F. Northcutt, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Plaintiff's Motion to Remand ("Motion") and Plaintiff's Statement, which the court construes as a bind-

ing stipulation ("Stipulation"), both filed on November 18, 1998. On December 8, 1998, Defendants Voyager Life Insurance Company ("Voyager") and Sabrina Lewis (collectively "Voyager Defendants") filed Defendants' Submission in Opposition to Plaintiff's Motion to Remand, which this court construes as a Response ("Voyager Resp."). On December 9, 1998, Defendants Heilig–Meyers Furniture Company, Inc. ("Heilig–Meyers"), George W. Ball, Jr., and Anita Olliff (collectively "Heilig–Meyers Defendants") filed a Response to Plaintiff's Motion to Remand ("Heilig–Meyers Resp."), in which they join in and incorporate by reference the arguments set forth in the Voyager Response. On December 16, 1998, Plaintiff filed a Response to Defendants' Opposition to Motion to Remand, which the court construes as a Reply ("Reply"). Also before the court is a Stipulation for Dismissal filed on December 17, 1998, by Plaintiff and Defendants Heilig–Meyers and Ball.

After a thorough review of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion to Remand is due to be granted.[1]

## FACTUAL BACKGROUND

On or about May 31, 1996, Plaintiff purchased furniture on credit from Defendant Heilig–Meyers. (Compl. ¶ 7; Heilig–Meyers Defendants' Ans. ¶ 7.) Plaintiff also purchased disability insurance as part of her installment contract. (Compl. ¶ 8; Heilig–Meyers Defendants' Ans. ¶ 8.) According to Plaintiff, the total sales price for the furniture and insurance was $3,580.14. (Compl. ¶ 8.) Plaintiff's installment contract required that she make twenty-three monthly payments of $150.00 beginning on June 1, 1996 and a final payment of $130.14 on May 1, 1998. (*Id.*) Defendant Heilig–Meyers procured Plain-

---

1. Based upon its finding that Plaintiff's Motion to Remand is due to be granted, the court declines to enter an Order regarding the Stipulation for Dismissal and, therefore, leaves consideration and adjudication of such Stipulation to the Circuit Court of Macon County, Alabama.

tiff's disability insurance policy from Defendant Voyager. (*Id.* ¶ 9.) Plaintiff alleges that Defendant Ball, an employee of Defendant Heilig–Meyers, told her that, in the event she became disabled, the insurance policy would pay her monthly furniture bill for as long as she remained disabled during the term of the contract. (*Id.* ¶ 10.)

Shortly after purchasing the furniture, Plaintiff became disabled and was no longer able to work. (*Id.* ¶ 11.). Plaintiff contacted Defendant Heilig–Meyers to make a claim under the disability insurance policy. (*Id.*) Plaintiff alleges that she was told by Defendant Ball and/or Defendant Olliff, another employee of Defendant Heilig–Meyers, to complete the claimant's portion of the credit disability form. (*Id.* ¶ 12.) Plaintiff was required to complete subsequent claim forms for continuing disability claims during the duration of her disability, which endured throughout the entire term of her installment contract with Defendant Heilig–Meyers. (*Id.* ¶¶ 12 & 13.) During the term of Plaintiff's installment contract, Defendant Voyager made several payments on Plaintiff's account to Defendant Heilig–Meyers. (*Id.* ¶ 14.)

Plaintiff alleges, however, that Defendant Voyager and/or Defendant Lewis, an agent and/or employee of Defendant Voyager, failed to make consistent monthly payments of $150.00 as required under the terms of the installment contract, thereby resulting in the delinquency of Plaintiff's account. (*Id.*) In or about May, 1998, Plaintiff began to receive telephone calls from Defendant Heilig–Meyers, wherein it demanded payment of the $761.81 balance still owed on Plaintiff's account. (*Id.* ¶ 15.) Plaintiff alleges that said balance should have been paid in full pursuant to the terms of the insurance agreement. (*Id.*)

On or about October 6, 1998, Plaintiff filed a five-count Complaint in the Circuit Court of Macon County, Alabama, alleging fraud, suppression, negligence, bad faith, and breach of contract. In each of the five counts of her Complaint, Plaintiff makes an unspecified demand for damages. The Voyager Defendants timely filed a Notice of Removal ("Rem.Notice") in this court on November 6, 1998, basing jurisdiction upon diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs, based upon Plaintiff's claims for unlimited compensatory and punitive damages.[2] Also on November 6, 1998, the Heilig–Meyers Defendants filed their Consent to Removal.

Thereafter, Plaintiff filed the instant Motion to Remand, along with her Stipulation, in which she argues that this court lacks diversity jurisdiction because she promises "[t]hat under no circumstances shall Plaintiff seek nor accept more than $75,000.00 even if the jury verdict exceeds that amount." (Pl.'s Stipulation ¶ 2.)

## DISCUSSION

■ Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). A federal district court may assert jurisdiction in a case involving citizens of different states where the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). Therefore, where the parties are diverse and the amount in controversy is sufficient, a defendant has the statutory right to remove an action from state court to federal court. *Id.*

■ It is well-settled that the defendant, as the party removing an action to

---

**2.** The court notes that the Voyager Defendants argue in both their Notice of Removal and in the Voyager Response that Defendant Olliff has been fraudulently joined by Plaintiff to defeat diversity jurisdiction. The court further notes that the Voyager Defendants also argue that Plaintiff is precluded from pursuing any claims against the Heilig–Meyers De-

fendants due to the terms of an Order of Final Judgment entered by the Circuit Court of Fayette County in a prior class action lawsuit. However, the court, in finding remand of this case to the Circuit Court of Macon County proper due to Defendants' inability to demonstrate the requisite amount in controversy, declines to address these two issues.

federal court, has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Seroyer v. Pfizer, Inc.,* 991 F.Supp. 1308, 1312 (M.D.Ala.1997) (DeMent, J.). Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of a remand to state court." *Seroyer,* 991 F.Supp. at 1312 (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994)); *see also Shamrock Oil,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214; *Diaz,* 85 F.3d at 1505; *Coker v. Amoco Oil Co.,* 709 F.2d 1433 (11th Cir.1983); *Stone v. Williams,* 792 F.Supp. 749 (M.D.Ala.1992).

The Eleventh Circuit has held that where a plaintiff specifically claims less than the requisite jurisdictional amount in controversy in state court, a defendant must prove to a "legal certainty" that plaintiff's claims would not yield a recovery less than the jurisdictional amount. *See Burns,* 31 F.3d at 1095; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (holding that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith (and) it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). "This heavy burden reflects the notion that plaintiff has the right to choose his own forum, for 'plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.'" *Seroyer,* 991 F.Supp. at 1312 (citing 14A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3702). "If [plaintiff] does not desire to

try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury,* 303 U.S. at 294, 58 S.Ct. 586.

■ However, "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356–57 (11th Cir.1996). In cases where plaintiff has made such an unspecified damages demand, "a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Id.*

In the instant case, Plaintiff's Complaint sets forth an unspecified demand for damages, stating that "Plaintiff demands judgment against the Defendants for compensatory and punitive damages, plus interest and costs, in an amount in excess of the jurisdictional minimum of this Circuit Court, as may be assessed by a jury." (Compl. at 5–7, 9–10, 12). However, as part of her Motion to Remand, Plaintiff includes a Stipulation, wherein she clarifies the amount in controversy by stating "[t]hat under no circumstances shall Plaintiff seek nor accept more than $75,000.00 even if the jury verdict exceeds that amount." (Pl.'s Stipulation ¶ 2.)

In their Response, Defendants contend that this court must not consider Plaintiff's Stipulation because it was submitted post-removal for the improper purpose of defeating diversity jurisdiction by altering the amount of damages in controversy. (Voyager Resp. at 12–16.) In support of their position, Defendants rely on the United States Supreme Court case of *St. Paul Mercury,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, as standing for the proposition that Plaintiff's post-removal Stipulation may not be used to divest a federal court of jurisdiction. Defendants specifically cite to that portion of *St. Paul Mer-*

*cury* where the Supreme Court stated that "events occurring subsequent to removal which reduce the amount recoverable ... do not oust the district court's jurisdiction once it has attached." *Id.* at 293, 58 S.Ct. 586. Defendants note that the Eleventh Circuit Court of Appeals, while briefly exploring the issue of post-removal affidavits offered in support of remand, refers in a footnote to this post-removal limitation imposed by the Supreme Court in *St. Paul Mercury. See Tapscott,* 77 F.3d at 1359 n. 15 (citing *St. Paul Mercury,* 303 U.S. at 293, 58 S.Ct. 586).

Defendants also offer this court cases in which the Fifth, Sixth, and Seventh Circuit Courts of Appeals have prohibited the use of a post-removal stipulation to defeat diversity. *See Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424 (7th Cir. 1997); *Marcel v. Pool Company,* 5 F.3d 81 (5th Cir.1993); *Mitchell v. White Castle Systems, Inc.,* 86 F.3d 1156, 1996 WL 279863, at *2 (6th Cir.1996). Finally, Defendants contend that, in *Marcel,* the Fifth Circuit limited its recent prior holding in *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia, S.A.* ("AN-PAC"), 988 F.2d 559 (5th Cir.1993). Defendants note that in *ANPAC,* the Fifth Circuit remanded the case to state court, holding that plaintiffs' attorney's post-removal affidavit stating that damages are less than $50,000 per plaintiff may be considered by the court in deciding whether remand is proper. *See id.* Defendants note that in *Marcel,* however, the Fifth Circuit limited *ANPAC* to the specific facts of that case, stating that "[t]here [in *ANPAC* ], under narrow and somewhat unusual circumstances, we directed a remand on the basis of an attorney's unilateral stipulation ... that the claim did not exceed $50,000." *Marcel,* 5 F.3d at 83.

▪ Despite the foregoing arguments of Defendants, the court finds the nature of the Stipulation in the instant case to be sufficient evidence that this court lacks subject matter jurisdiction. Specifically, the court finds the instant Stipulation to be

distinguishable from the stipulations in the Fifth, Sixth, and Seventh Circuit cases cited by Defendants. Further, the court finds that, in the cases cited by Defendants, the stipulations and/or affidavits each contained one fatal flaw not present in the instant case—they all failed to *specifically bind* the plaintiffs to accept no more in damages than the requisite jurisdictional amount in controversy. *See Chase,* 110 F.3d at 427 (demonstrating failure to bind plaintiff, where· plaintiff stipulated merely that she would not seek over $50,000); *Marcel,* 5 F.3d at 82 (demonstrating failure to bind plaintiff, where plaintiff, nine months after defendant filed its notice of removal, filed a motion to remand, in which he stipulated merely that his claim is not worth the $50,000 minimal jurisdictional limit of the court); *Mitchell,* 1996 WL 279863, at *2 (demonstrating failure to bind plaintiff, where plaintiff rejected an offer to stipulate that her claims did not exceed $50,000).

The court further finds that even the stipulation in *ANPAC,* a case which actually supports Plaintiff's position in the instant case, is not as strongly worded as Plaintiff's Stipulation. In *ANPAC,* the language of the stipulation fails to bind plaintiff, where the attorney's affidavit merely declared that no individual plaintiff suffered a loss greater than $50,000. *See ANPAC,* 988 F.2d at 562.

The cases relied upon by Defendants demonstrate that, "when the affidavits, affirmations, or statements of the party who seeks remand *fall short of stipulating that the claimant will not seek more than the jurisdictional amount,* jurisdiction must be assessed with reference to all the evidence" and the court will not rely on such a stipulation. *Printworks, Inc. v. Dorn Co.,* 869 F.Supp. 436, 440 (E.D.La.1994) (emphasis added); *see also Hall v. Travelers Ins. Co.,* 691 F.Supp. 1406 (N.D.Ga. 1988) (finding that unless plaintiff's attorney stipulated that he would not seek attorneys' fees resulting in total recovery in excess of the jurisdictional amount, remand would not be granted on the strength of the attorney's statement that

his fee request would not give rise to verdict greater than the jurisdictional amount); *Robinson v. Quality Ins. Co.,* 633 F.Supp. 572 (S.D.Ala.1986) (finding that an attempted amendment to complaint asserting that damages were less than jurisdictional amount supported remand where there was no hard evidence to contrary).

Based on the foregoing cases, it becomes clear that the plaintiffs in those cases stipulated merely that their claims did not amount to the requisite amount in controversy; those plaintiffs did *not* sufficiently stipulate that they would not seek or accept a verdict greater than the amount in controversy. In contrast, here, Plaintiff specifically stipulates "[t]hat the amount in controversy does not exceed $75,000.00 including compensatory and punitive damages" and then binds herself by further stipulating "[t]hat under no circumstances shall Plaintiff seek nor accept more than $75,000.00 even if the jury verdict exceeds that amount." (Pl.'s Stip. ¶¶ 1–2.)

Therefore, the court is not persuaded by Defendants' arguments and finds that Plaintiff's Statement is a proper binding Stipulation that may be considered by the court in deciding whether remand is proper.[3] Specifically, the court finds that Plaintiff's Stipulation clarifies the Complaint by identifying that the amount in controversy will not be in excess of $75,-000. In so doing, "the court is still examining the jurisdictional facts as of the time the case is removed, but the court is considering information submitted after removal." *ANPAC,* 988 F.2d at 565; *cf. St. Paul Mercury,* 303 U.S. at 293, 58 S.Ct. 586.[4] Accordingly, the court finds that Plaintiff's Stipulation may be considered in deciding whether to remand Plaintiff's case.

In an effort to prove by a preponderance of the evidence that the amount in controversy in the instant case more likely than not exceeds $75,000, Defendants present certified copies of various jury verdicts in

3. The court notes Defendants' argument that Plaintiff's Statement is neither an affidavit confirmed by Plaintiff's oath or affirmation nor an unsworn declaration, subscribed by Plaintiff as true under penalty of perjury, pursuant to 28 U.S.C. § 1746. The court is not persuaded by such argument, however, and is satisfied that Plaintiff's Statement, which the court has construed as Plaintiff's Stipulation, completely binds Plaintiff and her counsel to seeking or accepting no more than $75,000 in this case. Indeed, the Stipulation was signed by Plaintiff, as witnessed by a Notary Public, and signed by her attorney, an officer of the court, who is subject to the potential sanctions of Rule 11 of the Federal Rules of Civil Procedure. As set forth in the final paragraph of this opinion, the court strenuously cautions Plaintiff and her counsel by reminding them both of the binding nature of Plaintiff's Stipulation and the consequences of any failure to abide by such Stipulation.

4. The court further finds Defendants' reliance on *St. Paul Mercury* as standing for the proposition that Plaintiff's post-removal Stipulation may not be used to divest a federal court of jurisdiction to be misplaced because the facts in *St. Paul Mercury* are distinguishable from those in the present case. In *St. Paul Mercury,* the plaintiff's complaint, which was originally filed in federal court, contained a specific demand for damages which appeared to be in excess of the jurisdictional amount in controversy, the plaintiff never offered any type of stipulation to defeat diversity, and the federal district court entered judgment for the plaintiff. *See St. Paul Mercury,* 303 U.S. at 285, 58 S.Ct. 586. Only on appeal by the defendant did the Circuit Court of Appeals raise the jurisdictional issue when it refused to decide the merits of the appeal based upon the ground that the record demonstrated that plaintiff's claim had never met the jurisdictional minimum for diversity. *Id.* Not until then, long after the jurisdiction of the federal courts had attached, did the Supreme Court determine that the federal courts could not be ousted of their jurisdiction over the case. *Id.* at 293, 58 S.Ct. 586. Contrastingly, the court finds that federal court jurisdiction never attached to the instant case.

The court further finds that, while Defendants properly note that the Eleventh Circuit in *Tapscott* referred to *St. Paul Mercury* on the issue of post-removal affidavits used to defeat diversity, Defendants failed to note that the Eleventh Circuit expressly declined to decide the issue at that time. *Tapscott,* 77 F.3d at 1359 n. 15 (stating that "[w]e decline to decide today whether such artful pleading may be utilized to defeat diversity jurisdiction").

**1304**

allegedly similar cases in which damages were awarded in excess of the minimum jurisdictional amount. However, the court finds that, because Plaintiff has submitted a binding Stipulation in which she promises to neither seek nor accept damages in excess of $75,000, Defendants have failed to prove by a preponderance of the evidence that damages will be in excess of $75,000.

Plaintiff, in stipulating to a damage award that will not exceed $75,000, accurately applies the rule followed in *Seroyer*, that "only the sum actually demanded is in controversy." 991 F.Supp. at 1312. Accordingly, because Plaintiff is the master of her own claims and has stipulated that she will neither seek nor accept damages in excess of $75,000, the court finds that Plaintiff's Motion to Remand is due to be granted.

In so finding, the court emphasizes that, while it does not call into question the integrity or statements made herein by counsel or the binding stipulation made by Plaintiff, should Plaintiff disregard her stipulation and pursue or accept damages in excess of $75,000, then upon application to the court by opposing counsel, an investigation into the representations of Plaintiff's counsel to this court will be swift in coming. Further, the court forewarns Plaintiff that sanctions, should they be deemed appropriate, will be painful upon arrival.

### *ORDER*

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiff's Motion to Remand be and the same is hereby GRANTED, and this action be and the same is hereby REMANDED to the Circuit Court of Macon County, Alabama, pursuant to 28 U.S.C. § 1447(c). The Clerk of the Court is DIRECTED to take all steps necessary to effectuate said remand.